**Lonene NOVAK, Administratrix of the Estate of Yvionna Cram, Deceased, Appellant,**

v.

**Herbert GRAMM, Special Administrator of the Estate of Louise Gramm, Deceased, and W. E. Bartholow & Son Construction Company, Appellees.**

No. 72–1066.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1972.

Decided Nov. 3, 1972.

Gerald L. Reade and John R. Kabeiseman, Yankton, S. D., for appellant.

John L. Morgan, Mitchell, S. D., and James E. Doyle, Yankton, S. D., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY, Circuit Judge, and DENNEY, District Judge.*

MEHAFFY, Circuit Judge.

This appeal is from a judgment based on a jury verdict in the amount of $35,000 in favor of plaintiff's dece-

dent, Yvionna Cram, hereafter referred to as plaintiff. This litigation arose as a result of a collision on October 3, 1969 between the automobile in which plaintiff was riding and which was being driven by her mother, and a truck owned and operated by W. E. Bartholow & Son Construction Company. The collision occurred on U.S. Highway 81 near Yankton, South Dakota.

*The Parties.*

In addition to plaintiff, the parties include the special administrator of the estate of Louise Gramm, mother of plaintiff and driver of the automobile who also lost her life in the accident, and who appears here as a defendant-appellee; W. E. Bartholow & Son Construction Company, owner and operator of the truck, also appearing here as a defendant-appellee; and Lillian Heckenlaible and her son, Daryl, both occupants of the automobile (their cases were severed but both appeared as witnesses in the trial in district court).

*Jurisdiction.*

This action for wrongful death was brought in the United States District Court for the District of South Dakota. Jurisdiction is based on diversity of citizenship.

*Issues on Appeal.*

Despite the substantial verdict, plaintiff filed a motion for additur, or, in the alternative, for a new trial.[1] The district court denied this motion and this appeal followed. For the reasons hereinafter stated, we affirm the judgment of the district court.

*Summary of Salient Facts.*

It will make for a more clear understanding to capsulize the relatively simple facts in this case.

The four occupants of the automobile involved, driven as stated by plaintiff's

---

* Sitting by designation.

1. Plaintiff's motion for a new trial was an alternative request for a new trial limited to the question of damages or for a new trial on the issues of damages and liability. In this appeal plaintiff still seeks a new trial either on the issue of damages alone or, alternatively, on both damages and liability. For the sake of simplicity, however, we will treat the question of a new trial without further reference to its alternative aspect.

mother, were the plaintiff, occupying the front and adjacent seat to her mother, Mrs. Lillian Heckenlaible, sitting on the rear seat directly behind the driver, and her son, Daryl, occupying the seat beside his mother and directly behind plaintiff. These four people worked in the Yankton State Hospital and lived in Menno, South Dakota, a distance of about thirty-five miles from Yankton. When their work shift on the day of the accident was over, these four made a short visit in Yankton and then proceeded north on U.S. Highway 81 en route home. The weather was clear and the highway was dry.

W. E. Bartholow & Son Construction Company had a state contract to resurface a portion of Highway 81 commencing about fifteen miles north of Yankton. The portion of the highway covered by the contract was approximately six miles and the accident occurred approximately two miles within the construction zone. The contractor had placed the usual signs approaching the construction work and about two miles within the construction zone had stationed a flagwoman at the intersection of a gravel road wearing an orange vest and equipped with a hand sign which read on one side "Stop" and on the other side "Slow." The flagwoman stopped the automobile in which plaintiff and the others were riding and advised them not to proceed further into the construction zone until they could be led through by a pilot car. When the flagwoman stopped the automobile, the driver lowered the window and the flagwoman gave her the instructions. Obviously the occupants of the car decided to take the gravel road to the west and thus bypass the balance of the construction area. They appeared to be having a conversation when the flagwoman left the driver's window and proceeded to the rear of the car. Shortly after the automobile stopped it began to make a left turn onto the gravel road. In so doing, the automobile crossed into the path of the asphalt truck which was travelling north in the passing lane.

The truck struck the automobile broadside and the two vehicles landed in the northwest corner of the intersection. This happened so quickly that the flagwoman took to the ditch for her own protection.

Joseph Healy, a farmer, had been cutting silage in a field to the east of the point of the accident and at the time of the accident was standing in a farm driveway and observed the collision as well as the approach of the truck. He observed the flagwoman stop the automobile and appear to be talking to the driver and observed her walk along the automobile towards the rear. He had noticed the operation of the pilot cars and saw the approaching truck enter the west lane and reduce its speed prior to the time that the automobile started moving into the west lane directly into the path of the truck. Healy said that this happened when the truck was only thirty feet to the rear and at a time when the truck had reduced its speed to no more than thirty miles per hour. Mr. Healy's testimony was corroborated in pertinent part by the flagwoman and the driver of another of the contractor's trucks which was approaching the point of the accident from the north in the west lane.

*Additur.*

Plaintiff's first ground for reversal is that the trial court erred in denying the motion for additur. Plaintiff acknowledges the general rule that in a case where the amount of damages is in dispute, a grant of additur violates the seventh amendment jury trial rights of the party against whom the addition is granted. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). Plaintiff argues, however, that the amount of damages was not in dispute and, in any event, *Dimick* should be limited to its facts. Neither contention is sound.

Plaintiff's argument that damages were not in dispute relies almost exclusively on the expert testimony of an economist who presented an allegedly

scientific computation of plaintiff's pecuniary damages.[2] Plaintiff contends that since these computations were not shown by the defendants to be erroneous, the amount of damages suffered had been proven to a mathematical certainty.[3] Thus, it is argued, the only method by which the jury could arrive at a different amount of damages is by an improper compromise of its findings on the question of liability.[4] With due deference to plaintiff's expert witness, we cannot agree that the computation of damages presented to the jury was infallible.

The technique used by the expert witness was to add plaintiff's projected lifetime net earnings and the replacement cost of her normal household duties, and then reduce the total to its present dollar value. Such a computation may have value for economists, but it is not an indisputable measure of legal damages. The jury was not bound to accept the assumptions upon which these computations were based.[5] The mechanical extrapolation of these assumptions into quantified totals was, therefore, merely evidence for the jury to consider, not proof of a mathematical certainty by which they were bound.

It is difficult to conceive of a more subjective task than placing a dollar value on the tragic loss of a human life. We cannot agree that the life of plaintiff, a 28 year old working mother of two, was proven to have an indisputable pecuniary value of $196,457.75.

Plaintiff also contends that Dimick v. Schiedt, supra, should be limited to its facts. To support this position plaintiff notes that the Supreme Court was closely divided in making its decision in *Dimick*. Further, plaintiff argues that since the time *Dimick* was decided new policy considerations have arisen, such as the increased expense of retrial and court congestion, that would lead the Court to a conclusion contrary to that reached in 1935. A long span of time, of course, can tend to erode the precedential value of a court's decision. In this instance, however, the result has been the opposite. The rule laid down in *Dimick*, although a close question of law at the time, has since become a firmly entrenched rule. There is no indication that the potential convenience of a different rule has altered the Supreme Court's view on this time-honored construction of the seventh amendment. *See generally* 6 Moore, Federal Practice ¶ 59.05[4] (1971).

*New Trial.*

Plaintiff also argues that even if additur is not granted, at least a new trial is warranted by the inadequacy of

2. The South Dakota wrongful death statute under which this action was brought limits recovery to pecuniary ·damages. S.D.Comp.Laws § 21-5-7 (1967).

3. The expert testimony established a range of damages from $193,795.00 plus funeral and medical expenses ($2,662.75) to $283,603.00 plus the same medical and funeral expenses. Plaintiff argues only that the low range figure was undisputed.

4. Plaintiff's argument on the improper compromise of damages due to doubts about liability is drawn largely from the following language of the South Dakota Supreme Court:
   "The evidence on liability was sharply disputed and it may be surmised that the jury encountered difficulty in arriving at a verdict on the issue of liability. There is some indication that it may have been the result of a compromise. *However, having found liability the jury*

*was duty bound to assess damages in accordance with the evidence presented, guided by the instructions of the court.* Zielinski v. Harris, 289 Mich. 381, 286 N.W. 654. If the jury allowed the issue of liability to control the amount of the award they were palpably mistaken in applying the rules of law." (Appellant's Brief at 54, quoting with emphasis supplied from Lanning v. Schulte, 82 S.D. 528, 149 N.W.2d 765 (1967)).

5. Among the assumptions upon which the expert's computations depend are the life expectancy of plaintiff, the number of years which plaintiff would have worked had she lived, the dollar value of plaintiff's household duties, and the dollar value of plaintiff's personal consumption (estimated to be a total of $1,348 annually). The jury, of course, not the economist, was the ultimate fact-finder as to each of these assumptions.

the damages. We have stated repeatedly that we will not reverse a trial judge's denial of a motion for a new trial on the grounds of an inadequate or excessive jury verdict except in those rare cases in which there is plain injustice or a monstrous or shocking result. *E.g.*, O'Brien v. Stover, 443 F.2d 1013, 1019 (8th Cir. 1971); Zatina v. Greyhound Lines, Inc., 442 F.2d 238, 242–243 (8th Cir. 1971); St. Paul Fire & Marine Ins. Co. v. Arkla Chem. Corp., 435 F.2d 857, 859 (8th Cir. 1971). This rule, laid down in Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 446–448 (8th Cir.), cert. denied, 368 U.S. 929, 82 S. Ct. 366, 7 L.Ed.2d 192 (1961), emphasizes the broad discretion that is given the trial judge in acting upon motions for a new trial based on inadequate or excessive jury verdicts.[6]

■ It is against this background that plaintiff presents two theories to justify reversal of the order denying the motion for a new trial. First, plaintiff argues that the $35,000 award is plainly unjust, monstrous, and shocking as required by *Solomon Dehydrating Co.*, supra. Once again plaintiff's contentions rely almost exclusively on the "shocking" discrepancy between the jury's verdict and the economist's computation of pecuniary damages. Once again we emphasize that neither we nor the jury were bound by such computations. We do not agree that the award was plainly unjust, monstrous, or shocking.

Second, plaintiff argues that since this is a diversity case we should apply South Dakota law in determining whether or not to reverse and remand for a new trial. According to this argument, we should not apply the plain injustice, monstrous or shocking result test of *Solomon*, but rather the South Dakota test of whether the award is "disproportionate to the injury sustained."[7] To support this argument plaintiff points to language such as that found in Perry v. Bertsch, 441 F. 2d 939, at 944 (8th Cir. 1971), to the effect that in diversity cases "It is important . . . that the damages awarded by a federal court jury shall not exceed those which could be sustained where the case is before the supreme court of that state." Plaintiff apparently has been misled by the language of our cases.

■ There is no conflict between *Solomon Dehydrating Co.* and the language quoted by plaintiff from Perry v. Bertsch. Indeed, the opinion in *Perry* quoted from and expressly followed *Solomon*. 441 F.2d at 944–945. When read in its full context, it is clear that the real meaning of the statement quoted by plaintiff from *Perry* is that the district court in a diversity case should consider, among all other factors, the result that would be reached in the state's courts when it rules on a motion for a new trial due to an inadequate or excessive verdict. Similarly, the result that would be reached in the state's courts is only one of the guides for this court in determining whether or not the district court has abused its discretion under the test set out in *Solomon Dehydrating Co.* Thus, for example, a district court in its discretion may grant a new trial because the verdict varies materially from the result that would have been reached in the state's courts. This court, however,

6. This broad discretion at the trial level coupled with a narrow scope of appellate review is not unique to this court. Thus, for example, the Fourth Circuit has stated in a similar context that it "operate[s] in a narrower area of discretion than district courts in the supervision of jury verdicts. It is not enough if our appraisal of a jury's calculation of damages does not run parallel to the trial judge's appraisal. In reviewing the justness of a verdict the broader scope of discretion is in the trial judge. . . ." Simmons v. Avisco, Local 713, Textile Workers Union of America, 350 F.2d 1012, 1020 (4th Cir. 1965).

7. Lanning v. Schulte, supra note 4. We assume, without deciding, that this is the standard which South Dakota would apply

could reverse the denial of a new trial in such a case only if the variance between the state court result and the federal court result is so great as to make the outcome monstrous, shocking, or plainly unjust. *See, e.g.,* Perry v. Bertsch, supra (personal injury verdict of $350,000 reversed as shocking when compared to other North Dakota awards); Bankers Life & Cas. Co. v. Kirtley, 307 F.2d 418 (8th Cir. 1962) (exemplary damages of $650,000 shocking when compared to other Iowa cases and reversed for remittitur or new trial).

After reviewing the South Dakota cases cited to us by plaintiff, we are not convinced that a different result would have been reached in that state's courts, much less that any difference would have been monstrous, shocking, or plainly unjust.

■■ Plaintiff finally contends that there are several grounds, independent of the alleged inadequacy of the verdict, for granting a new trial. Four of these grounds attack the district court's refusal to direct a verdict of liability against defendants and a verdict of no contributory negligence for plaintiff. Since the jury returned a verdict in favor of the plaintiff on both questions, these alleged errors seem to be nothing more than an indirect repetition of plaintiff's earlier attack on the adequacy of the damages. In any event, after reviewing the facts in the light most favorable to defendants we cannot say that the requests for directed verdicts should have been granted. Although the facts justified the verdicts ultimately rendered, there were still some questions of fact upon which reasonable men could differ. The possible negligence of each defendant, the possible negligence of plaintiff, the question of proximate cause, and the issue of the guest statute defense were all matters which were properly left for the jury to determine. Finally, plaintiff objects to the testimony of certain witnesses and the refusal of a requested instruction. We have carefully reviewed plaintiff's contentions in this regard and are

of the opinion that the district judge ruled correctly. We are of the further opinion that said rulings had no effect on the jury verdict and in no event would constitute reversible error.

The judgment of the district court is affirmed.